# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA, HMO LOUISIANA, INC., and DAVID MITCHELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>    -vs.-<br><br>CELGENE CORPORATION, BRISTOL MYERS SQUIBB COMPANY, ANTHONY INSOGNA, and JEROME ZELDIS,<br><br>        Defendants. | Civil Case No. 1:23-cv-07871<br><br>Judge Edgardo Ramos |

**MEMORANDUM OF LAW IN SUPPORT OF DR. JEROME ZELDIS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**FOR LACK OF PERSONAL JURISDICTION, LACK OF SUBJECT MATTER**
**<u>JURISDICTION, AND FAILURE TO STATE A CLAIM</u>**

**Table of Contents**

Page

I.  PRELIMINARY STATEMENT ...........................................................................1

II. STATEMENT OF FACTS ................................................................................3

    **1.** Procedural Background...............................................................................3

    **2.** Dr. Zeldis' Domicile ................................................................................3

        a. Dr. Zeldis' Current Domicile in Florida ...........................................4

        b. Dr. Zeldis' Limited New York Contacts...........................................4

    **3.** Substantive Allegations of the Complaint Regarding Dr. Zeldis. ..............5

III. ARGUMENT ..................................................................................................5

    **1.** The Court Lacks Personal Jurisdiction Over Dr. Zeldis .............................5

        a. As an individual, Dr. Zeldis is not subject to the nationwide service of process provision of Section 12 of the Clayton Act and consequently, the traditional criteria for personal jurisdiction on a Rule 12(b)(2) apply.......................................................................5

        b. There is no general jurisdiction over Dr. Zeldis in New York. .......7

        c. There is no specific jurisdiction over Dr. Zeldis in New York........8

            i. There is no jurisdiction under CPLR § 302(a)(1). ..............9

            ii. There is no jurisdiction under CPLR § 302(a)(4). ............10

    **2.** Plaintiffs' Federal Claim (Count Four) Fails To Allege A Justiciable Case or Controversy As To Dr. Zeldis.....................................................11

    **3.** Plaintiffs Fail To State The Substantive Elements Of A Monopolization Claim Against Dr. Zeldis. .......................................................................13

    **4.** Plaintiffs' Claims Against Dr. Zeldis Are Time-Barred...........................14

IV. CONCLUSION................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
    300 U.S. 227 (1937)............................................................................................12

*Alfandary v. Nikko Asset Mgmt. Co.*,
    337 F. Supp. 3d 343 (S.D.N.Y. 2018)..............................................................8

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)............................................................................13

*Antone v. Gen. Motors Corp.*,
    473 N.E.2d 742 (N.Y. 1984) ............................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002).............................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................13

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979).............................................................................15

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..............................................................................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................8

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993)............................................................................................11

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998)............................................................................8, 9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................7

*Daniel v. Am. Bd. of Emergency Med.*,
    988 F. Supp. 127 (W.D.N.Y. 1997), *modified*, 428 F.3d 408 (2d Cir. 2005)...............6

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005)........................................................................12

*Elsevier, Inc. v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)...........................................................10

*Faherty v. Fender*,
   572 F. Supp. 142 (S.D.N.Y. 1983) ...............................................................9

*Finkelstein v. Wachtel*,
   No. 00 CIV. 2672, 2003 WL 1918309 (S.D.N.Y. Apr. 21, 2003)................8

*FTC v. Shkreli*,
   581 F. Supp. 3d 579 (S.D.N.Y. 2022).........................................................14

*FTC v. Vyera Pharm., LLC*,
   479 F. Supp. 3d 31 (S.D.N.Y. 2020)...........................................................14

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)...........................................................................9

*Heerwagen v. Clear Channel Commc'ns*,
   435 F.3d 219 (2d Cir. 2006).........................................................................13

*Henderson v. INS*,
   157 F.3d 106 (2d Cir. 1998)...........................................................................9

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)......................................................................................11

*In re Roman Catholic Diocese, Inc.*,
   745 F.3d 30 (2d Cir. 2014).............................................................................8

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)...........................................................................6

*Ingenito v. Riri USA, Inc.*,
   89 F. Supp. 3d 462 (E.D.N.Y. 2015) .............................................................9

*Lavazza Premium Coffees Corp. v. Prime Line Distribs Inc.*,
   575 F. Supp. 3d 445 (S.D.N.Y. 2021)............................................................3

*Lear v. Royal Caribbean Cruises Ltd.*,
   No. 1:20-cv-4660-GHW, 2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) .....10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012).............................................................................6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)...................................................................9

*Linardos v. Fortuna*,
    157 F.3d 945 (2d Cir. 1998)...................................................................7

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012)...................................................................5

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)...................................................................11

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
    312 U.S. 270 (1941)...................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...................................................................11, 12

*Nat'l Artists Mgmt. Co. v. Weaving*,
    769 F. Supp. 1224 (S.D.N.Y. 1991)...................................................................7, 8

*Nat'l Treasury Emps.' Union v. Campbell*,
    654 F.2d 784 (D.C. Cir. 1981)...................................................................12

*Newton v. Meyer*,
    No. 22 Civ. 540 (JPC), 2023 WL 2563115 (S.D.N.Y. Mar. 17, 2023) ......................10

*Palazzo ex rel. Delmage v. Corio*,
    232 F.3d 38 (2d Cir. 2000)...................................................................7

*PepsiCo, Inc. v. Coca–Cola Co.*,
    315 F.3d 101 (2d Cir. 2002)...................................................................13

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)...................................................................7

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) (per curiam)...................................................................7

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)...................................................................6

*Tamam v. Fransabank SAL*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) (Keenan, J.)...................................................................6, 7

*U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors
Liquidation Co.*,
    475 B.R. 347 (S.D.N.Y. 2012)...................................................................11, 12

iv

*Union v. Campbell,*
    654 F.2d 784 (D.C. Cir. 1981) ....................................................................12

*United States v. Cambio Exacto, S.A.,*
    166 F.3d 522 (2d Cir. 1999) .......................................................................11

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966) ...................................................................................13

*United States v. Venturella,*
    391 F.3d 120 (2d Cir. 2004) .........................................................................7

*Vasquez v. Hong Kong & Shanghai Banking Corp.,*
    477 F. Supp. 3d 241 (S.D.N.Y. 2020) ..........................................................3

## Statutes and Rules

15 U.S.C. § 22 .......................................................................................................5

N.Y. CPLR
    § 302(a)(1) ....................................................................................................9
    § 302(a)(4) ..............................................................................................10, 11

Fed. R. Civ. P.
    12(b)(1) ..............................................................................................1. 2, 11
    12(b)(2) ................................................................................................1, 2, 6
    12(b)(6) ..............................................................................................1, 2, 13

## Other Authorities

Jack B. Weinstein et al., *New York Civil Practice: CPLR*
    ¶ 302.04 (2d ed. 2013) ................................................................................9

Defendant Dr. Jerome Zeldis ("Dr. Zeldis") respectfully submits this memorandum of law in support of his motion, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the first amended complaint ("FAC") filed in the above-captioned action.[1]

## I.    PRELIMINARY STATEMENT

Dr. Zeldis is a respected physician and scientist with over 45 years of experience in the medical and life sciences fields. He is a named inventor on over 40 U.S. patents and a widely published author of peer-reviewed articles, reviews, book chapters, and editorials. While working as a researcher at Celgene Corp., Dr. Zeldis played a role in research related to pomalidomide (brand name POMALYST®), an important drug for the treatment of multiple myeloma that has improved thousands of lives.

Now, approximately 15 years after he completed his work on pomalidomide and more than eight years after he left Celgene, Dr. Zeldis has been named in the amended complaint by indirect purchasers of Pomalyst. The allegations against Dr. Zeldis are that between 2002 and 2012 he was a named inventor on three Celgene patents related to pomalidomide and that Celgene obtained these patents via fraud on the Patent and Trademark Office ("PTO"). On this basis, the amended complaint contends that Dr. Zeldis monopolized the market for pomalidomide.

As an initial matter, the Court lacks personal jurisdiction over Dr. Zeldis, a resident of the state of Florida. The sole jurisdictional allegation in the amended complaint is that Dr. Zeldis is subject to the nationwide service of process under Section 12 of the Clayton Act, but this provision applies only to corporations, not to individual defendants. For an individual defendant, the

---

[1] Dr. Zeldis also hereby joins, and incorporates by reference, the arguments for dismissal advanced by co-defendants Celgene Corp., Bristol Myers Squibb Co., and Anthony Insogna.

traditional criteria for personal jurisdiction apply, and New York does not have personal jurisdiction over Dr. Zeldis because he is not domiciled in New York and the cause of action does not arise out of the fact of ownership, use, or possession of his vacation home in New York City. Nor does the amended complaint allege any conduct by Dr. Zeldis in New York giving rise to the claims against him. Accordingly, Dr. Zeldis seeks dismissal under Federal Rule of Civil Procedure 12(b)(2).

Substantively, should the Court reach the issues as to Dr. Zeldis, the amended complaint fares no better. The amended complaint contains two counts against him: Count Four for Declaratory and Injunctive Relief under the Sherman Act, and Count Five for damages for monopolization under the laws of 28 states. Count Four fails to allege a justiciable case or controversy and is subject to dismissal under Rule 12(b)(1). This count seeks only declaratory and injunctive relief. But there is no present controversy alleged between Dr. Zeldis and Plaintiffs that would benefit from a declaration (nor is any declaratory relief even sought in the prayer for relief). And Plaintiffs fail to allege any threat of future harm from Dr. Zeldis that could support an injunction against him.

Beyond that, both counts fail because they contain no allegations that Dr. Zeldis himself monopolized any market or was involved in the enforcement of any patents or the settlement of any litigation related to the patents—a necessary element of a monopolization claim based on the use or enforcement of patents. Finally, as to Dr. Zeldis, Counts Four and Five challenge actions taken by him approximately twelve years ago and are barred by the applicable statutes of limitation. Accordingly, and in the alternative, Dr. Zeldis seeks dismissal under Rule 12(b)(6).

## II.   STATEMENT OF FACTS

### 1.   Procedural Background

Plaintiffs filed the original complaint in this action on September 5, 2023, but did not name any individual Defendants. Plaintiffs filed the amended complaint on December 19, 2023, and added Mr. Anthony Insogna and Dr. Zeldis as individual Defendants.  Dr. Zeldis filed a letter requesting a pre-motion conference for an anticipated motion to dismiss on February 1, 2024. Following the pre-motion conference on February 22, 2024, the Court granted leave to file this motion.

### 2.   Dr. Zeldis' Domicile

The allegations in the amended complaint as to personal jurisdiction over Dr. Zeldis are exceedingly bare. Plaintiffs do not and cannot plead Dr. Zeldis has any ties to or connections to New York. The only pertinent jurisdictional allegation in the amended complaint—which is untrue—is that Dr. Zeldis resides in Princeton, New Jersey. *See* FAC ¶ 12.  In connection with Plaintiffs' letter briefing preceding this motion ("Letter Response"), Plaintiffs instead asserted that "during his time at Celgene, Zeldis conducted ample business in New York pertaining to pomalidomide" and that Dr. Zeldis owns an apartment in New York.  *See* Letter Response at 2. In fact, as attested in the declaration submitted with this motion,[2] Dr. Zeldis resides in Florida and did not conduct business in New York giving rise to Plaintiffs' claims.  And while he does own an apartment in New York, this alone is not a sufficient basis for personal jurisdiction.

---

[2] *See Lavazza Premium Coffees Corp. v. Prime Line Distribs Inc.*, 575 F. Supp. 3d 445, 458 (S.D.N.Y. 2021) ("When evaluating whether Plaintiffs have met their burden at th[e] [motion to dismiss] stage, 'the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.'") (quoting *Vasquez v. Hong Kong & Shanghai Banking Corp.,* 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020)).

a.       <u>Dr. Zeldis' Current Domicile in Florida</u>

In 2016, following his retirement from Celgene, Dr. Zeldis and his wife relocated to Hillsboro Beach, Florida with the intent to make it their permanent residence. *See* Declaration of Jerome B. Zeldis in Support of Motion to Dismiss ("Zeldis Decl.") ¶ 7. They have maintained their domicile in Florida since that time and have no present plans to relocate anywhere else. *Id.* Since 2016, he has filed his taxes as a Florida resident, become a registered Florida voter, maintained his vehicle registrations in Florida, and held a Florida driver's license. *Id.* ¶ 8.

From 1997 to 2016, Dr. Zeldis was employed at Celgene Corp. in New Jersey. *Id.* ¶ 5. During his time at Celgene, he conducted Celgene-related business in New Jersey. He has no specific recollection of conducting any Celgene-related business in New York. *Id.* ¶ 6. While he worked at Celgene from 1997 to 2016, Dr. Zeldis owned a home in Princeton, New Jersey and was domiciled in New Jersey. *Id.* ¶ 5. Among other things, he paid taxes during this time as a New Jersey resident, maintained his vehicle registrations in New Jersey, and held a New Jersey driver's license. *Id.* His office was first located at Celgene's facility in Warren, New Jersey, and later in Summit, New Jersey. *Id.*

b.       <u>Dr. Zeldis' Limited New York Contacts</u>

Dr. Zeldis was born in Connecticut in 1950 and lived on Long Island, New York until he moved to Providence, Rhode Island to attend college. *See id.* ¶ 3. Since leaving for college in 1968, he has never domiciled in New York. *Id.* ¶ 4. In 2008, Dr. Zeldis purchased an apartment in the Chelsea neighborhood of New York City so his daughter could live close to where she worked. *Id.* ¶ 11. This apartment was rented to his daughter pursuant to a written lease agreement. *Id.* In 2010, his daughter stopped working in Chelsea and he rented the Chelsea apartment to another individual pursuant to a written lease agreement. *Id.* ¶ 12. From December 2011 to 2014, the Chelsea apartment was generally unoccupied. *Id.* ¶ 13. Through mid-2012, the apartment was

being renovated. *Id.* From then until 2014, Dr. Zeldis and his wife would spend one or two weekends per month there. *Id.* In 2014, he sold that unit and purchased another unit in the same building. *Id.* ¶ 14. From 2014 to September 2016, this apartment was generally unoccupied, except for when he would spend one or two weekends per month there. *Id.* Although he was employed at Celgene through 2016, it was not his practice to conduct Celgene business during his weekend stays at the apartment. To the contrary, he made a practice of working on Celgene business only while at the Celgene facility in New Jersey. *Id.* ¶ 15.

### 3. Substantive Allegations of the Complaint Regarding Dr. Zeldis.

With regard to Dr. Zeldis, Plaintiffs allege that he is the inventor named on patents that Plaintiffs allege were fraudulently procured. *See* FAC ¶¶ 164, 205, 219, 230. Plaintiffs do not point to any declaration Dr. Zeldis submitted to the Patent Office. Plaintiffs do not allege he was present at any interviews that took place with examiners, *see* FAC ¶¶ 191, 222, 239, nor do they allege in any way that Dr. Zeldis was involved in the enforcement of Celgene's patents or the settlement of lawsuits concerning those patents.

## III. ARGUMENT

### 1. The Court Lacks Personal Jurisdiction Over Dr. Zeldis

The Court should dismiss all claims against Dr. Zeldis because Plaintiffs cannot and do not meet their burden of sufficiently pleading personal jurisdiction over him. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012).

> a.  As an individual, Dr. Zeldis is not subject to the nationwide service of process provision of Section 12 of the Clayton Act and consequently, the traditional criteria for personal jurisdiction on a Rule 12(b)(2) apply.

As an individual, Dr. Zeldis is not subject to the nationwide service of process provision of Section 12 of the Clayton Act. *See* Clayton Act § 12, codified at 15 U.S.C. § 22 (addressing actions "against a corporation"). For an individual defendant, the traditional criteria for personal

jurisdiction apply. *See, e.g., Daniel v. Am. Bd. Of Emergency Med.*, 988 F. Supp. 127, 201–06 (W.D.N.Y. 1997) (discussing sufficiently pleading personal jurisdiction over defendants to whom Section 12 does not apply and requiring plaintiffs satisfy the New York long-arm statute by establishing minimum contacts), *modified*, 428 F.3d 408 (2d Cir. 2005).

To compel a non-resident, such as Dr. Zeldis, to court in New York, the Court must determine if New York law provides a basis for personal jurisdiction. Personal jurisdiction over a defendant may be general or specific. *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "Specific personal jurisdiction exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Sonterra Cap. Master Fund Ltd. V. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (internal quotation marks omitted). If there is a basis for personal jurisdiction under New York law, the court must determine whether the exercise of jurisdiction would be permissible under Due Process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

In opposing a Rule 12(b)(2) motion, plaintiffs must sufficiently plead a *prima facie* case of personal jurisdiction. A *prima faci*e showing entails (1) proper service; (2) a statutory basis for personal jurisdiction; and (3) that "the exercise of personal jurisdiction … comport[s] with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). "A *prima facie* showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v.*

*Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (Keenan, J.) (internal quotation marks omitted). Here, Plaintiffs fail to meet their burden of sufficiently pleading a *prima facie* case of personal jurisdiction because Dr. Zeldis is not domiciled in New York and this case does not arise out of conduct by Dr. Zeldis in New York.

b.    There is no general jurisdiction over Dr. Zeldis in New York.

Dr. Zeldis is not domiciled in New York so as to be subject to general jurisdiction. General jurisdiction comports with due process where an individual is "at home," meaning the place of "domicile." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam); *see also Daimler AG v. Bauman*, 571 U.S. 117 (2014). Although Dr. Zeldis owns an apartment in New York, it is well-established that "[o]wning property in a forum does not alone establish domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). Indeed, "[o]ne may have more than one residence … but a person may have only one domicile." *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004); *see also Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("A person has but one domicile."); *Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 745 (N.Y. 1984) ("New York has long recognized that 'residence' and 'domicile' are not interchangeable. … [W]hile a person can have but one domicile he can have more than one residence.").

A person's domicile is "the place where a person has his true fixed home … to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). Plaintiffs cannot sufficiently plead that Dr. Zeldis is domiciled in New York, because they cannot sufficiently plead that he has ever intended his apartment in New York to be his "true fixed home and principal establishment." *Id.* On the contrary, his home in Florida is where he "inten[ds] to remain … indefinitely." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224,

1227 (S.D.N.Y. 1991). As such, his apartment in New York cannot form the basis for general jurisdiction.

Indeed, even far more significant connections to New York would not suffice to sufficiently plead a New York domicile. For instance, in *Finkelstein v. Wachtel*, Judge Martin concluded that the Defendant who owned a New York apartment nevertheless remained a Connecticut domiciliary notwithstanding that he spent 178 days in New York, received bills relating to his New York apartment in New York and used multiple doctors, lawyers, a bank, a broker and a tax preparer all in New York. No. 00 CIV. 2672, 2003 WL 1918309, at *3 (S.D.N.Y. Apr. 21, 2003). These facts did not outweigh the evidence that the Defendant continued to maintain a Connecticut residence and voted and paid taxes as a Connecticut resident. *See id.* Here, on each relevant metric—amount of time in New York, receiving bills, use of New York-based professionals—Dr. Zeldis is less connected to New York than the Defendant in *Finkelstein*.

c.    There is no specific jurisdiction over Dr. Zeldis in New York.

Specific jurisdiction under New York law is available only when the defendant has "purposefully directed" his activities at residents of the state, and the litigation results from injuries "aris[ing] out of or relat[ing] to those activities." *Alfandary v. Nikko Asset Mgmt. Co.*, 337 F. Supp. 3d 343, 359 (S.D.N.Y. 2018) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Put differently, "specific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction." *In re Roman Catholic Diocese, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (internal quotation marks omitted).

In the Second Circuit, a claim is considered to arise out of or relate to at least one of the defendant's contacts with the forum when there is a substantial connection between the two, such that the assertion of jurisdiction is fair and reasonable. *See Chew v. Dietrich*, 143 F.3d 24, 28 &

n.4 (2d Cir. 1998). In other words, specific jurisdiction "permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks omitted). Specific jurisdiction is governed by N.Y. Civ. Prac. Law § 302, which permits courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case "aris[e] from" one of four specific kinds of contact with New York, including, in pertinent part, "(1) transact[ing] any business within the state …; or (4) own[ing], us[ing], or possess[ing] any real property situated within the state."

### i. There is no jurisdiction under CPLR § 302(a)(1).

With respect to § 302(a)(1), to determine the existence of jurisdiction, "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).

As the Second Circuit has explained, "'[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Best Van Lines, Inc.*, 490 F.3d at 246 (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)). The "arising from" prong of § 302(a)(1) requires "'a relatedness between the transaction and the legal claim such that the latter is not unmoored from the former …'" *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)). Thus, there mere fact that a contract signed in New York served as "a link in the chain of causation leading to Plaintiff's claims" is not itself sufficient for purposes of § 302(a)(1). *Faherty v. Fender*, 572 F. Supp. 142, 147 (S.D.N.Y. 1983). *See also* Jack B. Weinstein et al., *New York Civil Practice: CPLR* ¶ 302.04 (2d ed. 2013) ("The courts have refused to find that a cause of action arises out of defendant's activities within the state merely because the defendant had a

contact with New York that was a link in the chain of events leading to the claim for which relief is sought. Something more is needed.").

Here, there is no contact at all alleged with New York that gives rise to the claims, and Dr. Zeldis' declaration confirms what is conceded by omission in the amended complaint: that he does not recall doing any meaningful work in New York as the inventor on the Celgene patents in question. Zeldis Decl. ¶¶ 6, 15. As a result there is no articulable nexus or substantial relationship between the claim asserted and the actions that occurred in New York.

ii. There is no jurisdiction under CPLR § 302(a)(4).

Simply owning property in the state of New York is not sufficient for purposes of establishing specific jurisdiction over an individual under § 302(a)(4). *See, e.g.*, *Newton v. Meyer*, No. 22 Civ. 540 (JPC), 2023 WL 2563115, at *7 (S.D.N.Y. Mar. 17, 2023); *Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-cv-4660-GHW, 2021 WL 1299489, at *11 (S.D.N.Y. Apr. 7, 2021). The plaintiff's "cause of action *[must] arise[] out of* the fact of ownership, use or possession of New York realty." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (emphasis added). It requires a relationship between the property and the cause of action sued upon. *See id.* The claims in this case, like the claims in *Elsevier*, have nothing do with the ownership or use of property in New York. *See id.* ("Critically, the causes of action in this case, which concern an allegedly fraudulent scheme, do not derive from—and thus can be maintained irrespective of—[defendant's] ownership, possession, or use of the apartment in New York. [The defendant's] ownership and use of property in New York ... is not a fact sufficient to confer

jurisdiction upon the Court under § 302(a)(4).”). Consequently, there is no basis for jurisdiction over Dr. Zeldis under § 302(a)(4).[3]

### 2. Plaintiffs' Federal Claim (Count Four) Fails To Allege A Justiciable Case or Controversy As To Dr. Zeldis

The amended complaint contains two counts against Dr. Zeldis (Counts Four and Five). Count Four is asserted under Section 2 of the Sherman Act. Because Plaintiffs are indirect purchasers, they are barred from seeking damages under federal law (and do not do so). *See generally Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Instead, they limit their request for relief to declaratory and injunctive relief. But they fail to even demonstrate constitutional standing to seek such relief from Dr. Zeldis. Count Four is subject to dismissal under Rule 12(b)(1).

Plaintiffs are obligated to "demonstrate standing for each claim" and form of relief sought. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). With regard to declaratory relief, the Constitution limits the subject matter jurisdiction of federal courts to "cases and controversies." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy," *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993), to "demonstrate constitutional standing," *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).

In particular, a declaratory relief claim may proceed only if the dispute is "definite and concrete" and "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also U.S. Dep't of Treasury v. Off. Comm. of Unsecured*

---

[3] In their Letter Response and at the pre-motion conference, Plaintiffs asserted that mere ownership of property in New York, without more, is a sufficient basis for jurisdiction under § 302(a)(4). *See* Letter Response at 2; Pre-Motion Conf Tr. 17:6-9. This is not a correct statement of the law.

*Creditors of Motors Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012) ("An actual controversy 'must be … distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'") (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937)).  "Basically, the question in each case is whether the facts alleged … show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

Here, there is no such definitive and concrete, real and substantial controversy of sufficient immediacy alleged between Plaintiffs and Dr. Zeldis—who has not worked at Celgene since 2016 and who has not been alleged to have actively participated since 2011. *See, e.g.*, *MedImmune*, 549 U.S. at 127; *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). A declaration as to Dr. Zeldis does nothing to advance Plaintiffs' interests because Dr. Zeldis has not worked at Celgene for eight years. Rather, Plaintiffs' allegations relate to a "hypothetical state of facts." *Aetna Life Ins.*, 300 U.S. at 241. Indeed, showing how half-hearted Plaintiffs' gesture is at declaratory relief, Plaintiffs mention it nowhere in their prayer for relief at the end of the complaint.

Similarly unavailing is Plaintiffs' claim for injunctive relief against Dr. Zeldis. Plaintiffs nowhere state what injunction they seek against Dr. Zeldis.  Nor could they: Dr. Zeldis has not worked at Celgene for eight years and is not currently doing anything that affects Plaintiffs in any way.  As with declaratory relief, an injunction as to Dr. Zeldis would provide Plaintiffs with no benefit. *See Nat'l Treasury Emps.' Union v. Campbell*, 654 F.2d 784, 788 (D.C. Cir. 1981) ("[W]here the conduct challenged is personal to the original named defendant …  a request for prospective injunctive relief is mooted when the defendant resigns.").

### 3. Plaintiffs Fail To State The Substantive Elements Of A Monopolization Claim Against Dr. Zeldis.

Should the Court reach the issue, the two counts against Dr. Zeldis – Counts Four and Five – are subject to dismissal under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must raise the plaintiffs' right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a complaint must allege enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In applying that standard, a court does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Similarly, a court need not accept "legal conclusions couched as factual allegations." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). If the court can infer no more than "the mere possibility of misconduct" from the factual averments—that is, if the well-pleaded allegations of the complaint have not "nudged [plaintiffs'] claims … across the line from conceivable to plausible"—dismissal is appropriate. *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570).

Asserting a monopolization claim requires plaintiffs to plead two foundational hurdles: they must allege plausible facts showing that a defendant possesses monopoly power in a relevant market, and that defendant willfully acquired or maintained such power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *see also Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006); *PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

Plaintiffs make no claim that Dr. Zeldis ever possessed monopoly power or was involved in the allegedly improper enforcement of Celgene's patents. Instead, they apparently seek to sweep

Dr. Zeldis in through their allegations against Celgene. But to hold an individual defendant liable for a corporation's monopolization, the individual must exercise a substantial degree of "control" over the corporation. *See, e.g., FTC v. Shkreli,* 581 F. Supp. 3d 579, 637 (S.D.N.Y. 2022). For instance, in *FTC v. Vyera Pharmaceuticals, LLC*, the two individual Defendants were the founders of the company and one was the former chairman and largest shareholder. 479 F. Supp. 3d 31, 50 (S.D.N.Y. 2020). Shkreli, "Vyera's CEO" and "largest shareholder," was said to have "conceived of, implemented, maintained, and controlled Vyera's anticompetitive and monopolistic scheme" and "freely changed its management and directed its policy." *Shkreli,* 581 F. Supp. 3d at 637. Dr. Zeldis, in contrast, is nowhere alleged to have "conceived of, implemented, … and controlled" the alleged monopolistic scheme and the selling and pricing of Pomalyst. *Id.* Further, Dr. Zeldis could not conceivably had any "control" over the alleged monopolistic scheme past 2016, when he stopped working at Celgene; he certainly is not (and could not be) alleged to have any such control in 2020, which is when Plaintiffs allege they began to be harmed by the alleged monopolistic scheme (*see infra*). Indeed, as the Court is aware, monopolization claims against individual employees are exceedingly rare, and nothing alleged in the complaint suggests the type of extraordinary situation where an individual employee could have personal liability for the company's alleged monopolization of the market.

### 4. Plaintiffs' Claims Against Dr. Zeldis Are Time-Barred.

Plaintiffs contend that in 2011, Dr. Zeldis and others allegedly misrepresented to the patent examiner "that the treatment of multiple myeloma with pomalidomide had not been publicly disclosed previously." FAC ¶ 187. They further allege as a result of this omission, the examiner

improperly issued the '262 patent in April 2012. *See* FAC ¶¶ 178, 180, 187. The amended complaint alleges no subsequent affirmative conduct by Dr. Zeldis.[4]

As such, the four-year limitations period under federal law, as well as the applicable periods under state law,[5] expired long before the filing of the complaint.

In their Letter Response, Plaintiffs argued that their claims accrued in October 2020, because that is "when Aurobindo and Natco/Breckenridge received final FDA approval and would have launched lower-priced generic Pomalyst, absent the unlawful settlement agreements with Celgene." Letter Response (citing FAC ¶ 309). According to Plaintiffs, that FDA approval date is the earliest they could have "brought their suit for damages caused by delayed generic entry." *Id.* But that rule of accrual applies only to claims that a defendant overcharged for a product. S*ee Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979). It thus cannot apply to Dr. Zeldis, who is not a monopolist and is not alleged to have "overcharged" anyone. Because Dr. Zeldis has not committed any acts related to this dispute for over twelve years and has not even been affiliated with the company for eight years, the claims against him are long out of time.

## IV. **CONCLUSION**

For the reasons stated above, the claims against Dr. Zeldis should be dismissed.

Respectfully submitted,

/s/ Daniel B. Asimow

Daniel B. Asimow
**ARNOLD & PORTER KAYE
SCHOLER LLP**

---

[4] The amended complaint does allege that Dr. Zeldis passively "stood by" as others made false or misleading statement during the course of the prosecution of the '428 and '3939 patent prosecution. *See* FAC ¶ 230. But those patents were issued in 2014. *Id.* ¶ 231.

[5] The applicable state law periods are set forth in the table attached as an exhibit to this brief.

3 Embarcadero Center Ste. 10
San Francisco, CA 94111
Phone: (415) 471-3142
[Daniel.asimow@arnoldporter.com](mailto:Daniel.asimow@arnoldporter.com)

*Counsel for Dr. Jerome Zeldis*

**EXHIBIT TO MEMORANDUM OF LAW IN SUPPORT OF DR. JEROME ZELDIS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**APPLICABLE STATE STATUTES OF LIMITATION**

| State | Statute of Limitations | Accrual Date |
|---|---|---|
| Arizona | 4 years (Ariz. Rev. Stat. §§ 44-1401, *et seq.*) | The limitations period starts to run when the anticompetitive act occurs. *See* A.R.S. §§ 44–1407, 44–1408, and 44–1410. |
| California | 4 years (Cal. Bus. & Prof. Code §§ 16700, *et seq.*) | The limitations period starts to run when the act first causing injury occurs. *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1066 (N.D. Cal. 2016) (applying California law). |
| Connecticut | 4 years of knowledge of violation (Conn. Gen. Stat. §§ 35-24, *et seq.*) | The limitations period starts to run at the time of the violation. *See* § 35–40. |
| D.C. | 4 years (D.C. Code §§ 28-4501, *et seq.*) | The limitations period starts to run when the injury occurs. *See Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 509 (D.C. Cir. 1984) (applying a similar federal law). |
| Hawaii | 4 years (Haw. Rev. Stat. Ann. §§ 480-1, *et seq.*) | The limitations period generally starts to run when the alleged violation occurs. *See* HRS § 480-24; *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 671 (D. Haw. 2017); *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007). |
| Illinois | 4 years (740 Ill. Comp. Stat. 10/1, *et seq.*) | The limitations period for an antitrust claim starts to run when the prohibited market conduct is committed. *See People ex rel. Hartigan v. Moore*, 143 Ill. App. 3d 410, 412–13 (1986). |
| Iowa | 4 years (Iowa Code §§ 553.1, *et seq.*) | The limitations period starts to run when the plaintiff knows or should have known of the injury and its cause. *See* § 553.16. |
| Kansas | 3 years (Kan. Stat. Ann. §§ 50-101, *et seq.*) | Kansas law is not clear on when the statute of limitations for antitrust claims begins to run. |
| Maine | 6 years (Me. Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*) | The limitations period starts to run when the defendant commits an act that causes economic harm to the plaintiff. *See McKinnon v. Honeywell Int'l*, Inc., 977 A.2d 420, 424 (Me. 2009). |
| Maryland | 4 years (Md. Code Comm'l Law §§ 11-201, *et seq.*) | While Maryland courts have not addressed the accrual date for an antitrust claim based on a single violation, the limitations period generally starts to run when the plaintiff knew or should have known of the wrong. *See Cain v. Midland Funding, LLC*, 256 A.3d 765, 783-84 (Md. 2021). |
| Michigan | 4 years (Mich. Comp. Laws Ann. §§ 445.771, *et seq.*) | The limitations period starts to run at the time of the violation. *See DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 |

| State | Statute of Limitations | Accrual Date |
|---|---|---|
| | | F.3d 462, 467 (6th Cir. 1996) (interpreting Michigan antitrust laws). |
| Minnesota | 4 years (Minn. Stat. Ann. §§ 325D.49, et seq.) | The limitations period starts to run on the date of violation. *See* § 325D.64, subd. 1. |
| Mississippi | 3 years (Miss. Code Ann. § 15-1-49(1)) | The limitations period starts to run when the injury is discovered or should have been discovered with reasonable diligence. *See* § 15–1–49(2). |
| Nebraska | There is no statute of limitations that applies specifically to antitrust claims in Nebraska. | Nebraska's antitrust law, the Junkin Act (Neb. Rev. Stat. §§ 59-801 to 59-831), requires courts to apply its provisions with the same or similar language to federal antitrust law in accordance with federal law. § 59–829. Under federal law, the statute of limitations is four years. 15 U.S.C. § 15b. |
| Nevada | 4 years (Nev. Rev. Stat. Ann. §§ 598A.030, *et seq.*) | For a single cause of action, Nevada does not specify when a cause of action accrues. The limitations period starts to run when the injured party discovers or reasonably should have discovered facts supporting a cause of action. *See Bemis v. Est. of Bemis*, 967 P.2d 437, 440 n.1 (Nev. 1998). |
| New Hampshire | 4 years (N.H. Rev. Stat. Ann. §§ 356:1, *et seq.*) | New Hampshire courts have not addressed when an antitrust cause of action accrues. Courts may consider accrual date to be on the date that the defendant causes harm to the plaintiff. *See, e.g., Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 168 (1977). |
| New Mexico | 4 years (N.M. Stat. Ann. §§ 57-1-1, *et seq.*) | Claim is barred if it is not commenced within four years after the cause of action accrues or within four years after the plaintiff discovered, or by the exercise of diligence should have discovered, the facts relied upon for proof of the cause of action. *See* § 57–1–12. |
| New York | 4 years (N.Y. Gen. Bus. Law § 340) | The limitations period starts to run when the defendant's act injures the plaintiff. *See New York ex rel. Spitzer v. Feldman*, No. 01 Civ. 6691 SAS, 2003 WL 21576518, at *4 (S.D.N.Y. July 10, 2003). |
| North Carolina | 4 years (N.C. Gen. Stat. Ann. §§ 75-1, *et seq.*) | The limitations period starts to run when the defendant commits an act that injures any person. *See* § 75–16. |
| North Dakota | 4 years (N.D. Cent. Code §§ 51-08.1, *et seq.*) | The limitations period starts to run when the defendant commits an act that injures the plaintiff. *See Tarnavsky v. McKenzie Cnty. Grazing Ass'n*, 665 N.W.2d 18, 22 (N.D. 2003). |
| Oregon | 4 years (Or. Rev. Stat. §§ 646.705, *et seq.*) | There is no accrual date that directly applies to state antitrust claims. However, claims in Oregon generally accrue when all the elements of a cause of action are present. *See Duyck v. Tualatin Valley Irrigation Dist.*, 742 P.2d 1176, 1181 (Or. 1987). |

| State | Statute of Limitations | Accrual Date |
|---|---|---|
| Rhode Island | 4 years (R.I. Gen. Laws §§ 6-36-1, *et seq.*) | For actions based on a conspiracy, the cause of action accrues when the plaintiff discovers or by exercise of diligence should have discovered the facts relied on for proof. *See* § 6–36–23. |
| South Dakota | 4 years (S.D. Codified Laws §§ 37-1-3.1, *et seq.*) | There is no accrual date that applies to antitrust claims under South Dakota law. Under federal law, the limitations period starts to run when the defendant commits an act that injures a plaintiff's business. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000). |
| Tennessee | There is no statute of limitations that applies specifically to antitrust claims in Tennessee. Tennessee case law and other statutes may support a three-year statute of limitations for claims under the Tennessee Trade Practices Act. Tenn. Code Ann. §§ 47-25-101 to 47-25-112; *see State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *3 (Tenn. Ch. Sept. 25, 1980). | The limitations periods start to run when an injury occurs or when the injury is, or should have been, discovered with care and diligence. *See McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975); *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:07-CV-258, 2009 WL 736007, at *7 (E.D. Tenn. Mar. 17, 2009) (applying Tennessee law). |
| Utah | 4 years (Utah Code Ann. §§ 76-10-3101, *et seq.*) | The cause of action accrues on the date on which the elements of the claim exist and may be established. *See State v. Huntington-Cleveland Irrigation Co.*, 52 P.3d 1257, 1264 (Utah 2002). |
| Vermont | The antitrust law does not specify a statute of limitations. However, the statute of limitations for a civil action is six years. Vt. Stat. Ann. tit. 12, § 511. | *See Earle v. State*, 743 A.2d 1101, 1108 (Vt. 1999) (discussing civil claim accrues when a plaintiff learns a particular defendant injured plaintiff). |
| West Virginia | 4 years (W. Va. Code §§ 47-18-1 et seq.) | The limitations period starts to run when the cause of action arises. *See* § 47–18–11. |

| State | Statute of Limitations | Accrual Date |
|---|---|---|
| Wisconsin | 2 years (Wis. Stat. §§ 133.01, et seq.) | Wisconsin's antitrust statutes do not address when the limitations period starts to run. However, the discovery rule applies for all tort actions that are not already governed by a legislatively created discovery rule. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 746 N.W.2d 762, 769 (Wis. 2008). Under the discovery rule, the limitations period on a tort claim starts to run on the date the injury is discovered or with reasonable diligence should have been discovered. *See Stuart*, 746 N.W.2d at 769. |