IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA, HMO LOUISIANA, INC., and DAVID MITCHELL, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>CELGENE CORPORATION, BRISTOL MYERS SQUIBB COMPANY, ANTHONY INSOGNA, and JEROME ZELDIS,<br><br>      Defendants. | No. 1:23-CV-07871-ER |

**REPLY IN SUPPORT OF DEFENDANT
ANTHONY INSOGNA'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Instead of grappling with Mr. Insogna's arguments for dismissal, Plaintiffs largely just reiterate their fabrications that Mr. Insogna engaged in misconduct before the PTO. But even those false accusations fail to state a claim under the demanding standard for holding a defendant's lawyer individually liable under the antitrust laws—as even Plaintiffs do not meaningfully dispute. For these reasons, Plaintiffs' claims against Mr. Insogna should be dismissed with prejudice.[1]

## ARGUMENT

**I.  PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST MR. INSOGNA.**

As Mr. Insogna explained in his Motion to Dismiss, "an attorney may be found individually liable under the antitrust laws *only* if he exceeds his role as legal adviser and becomes an active participant in formulating policy decisions with his client to restrain competition." *Brown v. Donco Enterps., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) (emphasis added). Plaintiffs effectively concede that this is the controlling legal standard, admitting that attorneys may be liable under the antitrust laws only if they "make[] policy decisions for the corporation." Opp. Br., ECF 126 at 40 (quoting *Tillamook Cheese & Dairy Ass'n v. Tillamook Cnty. Creamery Ass'n*, 358 F.2d 115, 118 (9th Cir. 1966)); *see also id.* at 44 (acknowledging need to show that an attorney became "an active participant in *formulating policy decisions* with his client to restrain competition" (quoting *Brown*, 783 F.2d at 646) (emphasis added)). In other words, Plaintiffs admit that merely participating in one subcomponent of an allegedly anticompetitive scheme, or zealously implementing a client's strategy, is not enough. Rather, the attorney must *make* the corporation's policy decisions in order to expose himself to antitrust liability. *See Brown*, 783 F.2d at 646-47 (requiring that defendant attorney "exerted his power" to "direct the corporation" to engage in anticompetitive conduct).

---

[1] The claims against Mr. Insogna should also be dismissed for the reasons stated in Celgene's contemporaneously filed briefing as well as Parts II and III of Dr. Zeldis's contemporaneously filed briefing.

Yet Plaintiffs do not allege that Mr. Insogna did anything of the sort. Even after recognizing the policymaker standard, Plaintiffs contend that their allegations show merely "that Insogna knowingly and intentionally *engaged in* an anticompetitive scheme, with [purportedly] plausible and specific factual allegations of misrepresentations to the patent examiners, for an anticompetitive purpose." Opp. Br., ECF 126 at 44 (citing FAC ¶¶ 150, 158-59, 170-95, 210-16, 412, 421, 449-50, 465-66) (emphasis added). Plaintiffs use much the same language throughout their opposition—yet it conspicuously stops short of asserting that Mr. Insogna had any role in developing an alleged anticompetitive scheme, much less that he *directed* Celgene to engage in such a scheme. *See id*. at 1, 41-43 (arguing only that Mr. Insogna "[a]ided" Celgene and "was interconnected with Celgene's scheme to monopolize," that he "actively participated" in that scheme, and that his work "was an integral component of the overarching monopolization scheme"). As made clear by Plaintiffs' own cases—as well as by Mr. Insogna's cases that Plaintiffs ignore—that is not enough. *See Tillamook Cheese*, 358 F.2d at 118 (attorney can be liable only if he "makes policy decisions for the corporation," but not if his role "was only that of a legal adviser"); *Jarrow Formulas, Inc. v. Int'l Nutrition Co*., 175 F. Supp. 2d 296, 315 (D. Conn. 2001) (attorney can be liable only if he "exceed[s] his role as legal advisor" by "formulating policy decisions" for the corporation).

While Plaintiffs now argue that Mr. Insogna "orchestrated Celgene's scheme to fraudulently obtain patents," Opp. Br., ECF 126 at 41, Plaintiffs did not *plead* any such "orchestration" in their Amended Complaint—much less with specificity and plausibility. Nor would this assertion, if adequately alleged (with Plaintiffs also paying heed to their Rule 11 obligations), even suffice to state a claim against Mr. Insogna. Plaintiffs admit that obtaining patents was merely "the first step" in the alleged anticompetitive scheme. *Id*. Plaintiffs do not

2

argue (much less allege) that Mr. Insogna played *any* role in any subsequent step of that supposed scheme—and they certainly do not allege that he played a policymaking role for the supposed broader scheme, as would be required to hold any attorney individually liable.

Thus, Plaintiffs effectively concede exactly what Mr. Insogna argued in his opening brief: the Amended Complaint pleads only "that Mr. Insogna was involved in a scheme *to obtain patents*—not a scheme to enforce them," "to improperly settle cases with generic manufacturers," or to take any other action that could constitute an antitrust violation.  Insogna MTD, ECF 118 at 13.  Moreover, Plaintiffs do not dispute that merely obtaining patents—even improperly—cannot give rise to antitrust liability.  *Id*.; *see, e.g., Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).

Indeed, Plaintiffs never dispute the dispositive point that their Amended Complaint does not allege that Celgene had even *conceived* of any anticompetitive scheme when Mr. Insogna engaged in the patent-prosecution work at issue, much less that he was aware of or personally directed such a scheme.  Insogna MTD, ECF 118 at 14.  With no such pleading, no allegations that Mr. Insogna played any policymaking role in connection with the patents at issue, and no allegations that he played any role whatsoever in the enforcement of those patents, the Court should reject the claims against Mr. Insogna out of hand.

After seeing their opposition brief, it is even more surprising that Plaintiffs brought this claim against Mr. Insogna in the first place.  Plaintiffs tellingly never respond to Mr. Insogna's serious concerns about their motivations for doing so—when their theory could be flung at virtually *any* lawyer who participated in the prosecution of these patents.

## II. PLAINTIFFS' CLAIMS AGAINST MR. INSOGNA ARE TIME-BARRED.

Plaintiffs' claims against Mr. Insogna are also untimely.  *Berkey Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263 (2d Cir. 1979), which Plaintiffs cite, does not suggest otherwise—as that

3

case stands only for the proposition that "[s]o long as *a monopolist* continues to use the power it has gained illicitly to overcharge its customers, it has no claim on the repose that a statute of limitations is intended to provide." *Id*. at 295 (emphasis added). In that context, the monopolist's overcharges are simply the "final step" of an alleged anticompetitive scheme—which can fall within the limitations period even if the anticompetitive conduct started years earlier. *Id*. But Mr. Insogna does not make or sell the product at issue, much less do so *as a monopolist* himself, and Plaintiffs do not cite any cases extending *Berkey Photo*'s approach to individuals like him who allegedly played a supporting role in only the "first step" of an alleged scheme. To the contrary, Plaintiffs' sole case declining to apply the statute of limitations to claims against an individual defendant included relevant, culpable conduct by that individual "within the four-year period that preceded the filing" of the action. *FTC v. Vyera Pharms., LLC*, 479 F. Supp. 3d 31, 52 (S.D.N.Y. 2020). No conduct whatsoever by Mr. Insogna within the limitations period is pleaded here.[2]

As explained above, Plaintiffs' allegations regarding Mr. Insogna are limited to his role in patent prosecution. Plaintiffs do not allege that Mr. Insogna played any role in developing or implementing any anticompetitive scheme to enforce those patents. Even if Mr. Insogna could somehow be liable for his role in some supposed "scheme to fraudulently obtain patents," that purported scheme was fully realized no later than 2012 and 2014, when the relevant patents issued. FAC ¶¶ 152, 194, 215. Of course, neither Plaintiffs nor anyone else suffered an antitrust injury at that point (or ever): any supposed injury required many further, independent steps not alleged to have involved Mr. Insogna. But Plaintiffs' view that Mr. Insogna's legal work for Celgene more

---

[2] Plaintiffs also fail to explain their puzzling choice to pursue injunctive relief against Mr. Insogna while conceding that no such relief is available against Mr. Zeldis, Opp. Br., ECF 126 at 45, when they have not alleged any relevant conduct by Mr. Insogna in the past eleven years.

than 10 years ago has made him amenable to suit indefinitely—because he can be sued under the antitrust laws whenever others use those patents to allegedly cause overcharges—cannot be right.

Indeed, Plaintiffs' view would mean that *every* patent attorney would face potential antitrust liability (or at least litigation) if a client was accused of using the resulting patent as part of an alleged anticompetitive scheme, no matter how remote the supposedly anticompetitive actions are from the attorney's underlying conduct. Coupled with Plaintiffs' substantive theory of liability against Mr. Insogna, that approach would create a very real "possibility of overdeterrence." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 (1978). After all, if patent-prosecution work creates a risk of potential antitrust liability stretching indefinitely into the future, attorneys may not zealously advocate for their clients—exactly the opposite of what their ethical obligations require—out of fear that enterprising plaintiffs might sue them personally years later. *See Brown*, 783 F.2d at 646 (citing Model Code of Prof. Resp. EC 7-3). For this reason, too, the claims against Mr. Insogna should be dismissed.

### III. PLAINTIFFS' STATE-LAW CLAIMS AGAINST MR. INSOGNA ALSO FAIL.

Finally, Plaintiffs do not dispute that their state-law claims against Mr. Insogna are improperly conclusory and, regardless, should be dismissed if their federal claims are dismissed. *See* Insogna MTD, ECF 118 at 17-18.

### CONCLUSION

The Court should dismiss the claims against Mr. Insogna in their entirety with prejudice.

Dated: May 2, 2024

                                                  Aaron M. Healey
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3811
ahealey@jonesday.com

John M. Majoras
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
(202) 879-3939
jmmajoras@jonesday.com

*Counsel for Anthony M. Insogna, Esq.*

6